**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 19-CR-253-RM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**1. IAN THOMAS FORD**
**2.** ROBYN MARIE FORD

     **Defendant.**

---

**SUPPLEMENT TO MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

---

Mr. Ford, by and through his attorney, moves this Court to suppress evidence that was obtained in violation of his Constitutional rights. As grounds, Mr. Ford states the following:

**Introduction**

1. On April 11, 2019 Mr. Ford was stopped, detained and arrested in Colorado Springs, Colorado. Mr. Ford was driving a Volkswagen hatchback. The stated purpose of the stop is that Mr. Ford had outstanding non-specified felony warrants and that law enforcement was looking for him. Another reason for the stop may be that the front license plate of the car that Mr. Ford was inside did not have a front license plate.

2. El Paso County Sheriff Detective Glenn Boarman is a Task Force Officer. For that reason, he is referred to in this Motion as Task Force Officer or Officer Boarman.

3. Task Force Officer Boarman initiated a traffic stop on Hancock Expressway. Task Force Officer Boarman ordered Mr. Ford out of the Volkswagen and placed handcuffs on him. Officer Boarman told Mr. Ford that Mr. Ford had warrants. Task Force Officer Hathaway pat

searched Mr. Ford and recovered a bag of what law enforcement suspected to be
methamphetamine.

4.      Task Force Officer Boarman called Detective White and notified him of Mr. Ford's
arrest. Detective White arrived on scene.

5.      Task Force Officer Boarman searched the Volkswagen. The glove compartment
was locked. Task Force Officer Boarman unlocked the glove box. Inside the glove box Officer
Boarman reportedly found a Sig Sauer, model Mosquito, .22 caliber handgun.

6.      Task Force Officer Boarman and Officer Hathaway took the seized items to the El
Paso County Sheriff's Office Evidence facility.

7.      While Officer Boarman was at the evidence facility, Detective White informed
Task Force Officer Boarman that Mr. Ford consented to a search of his telephone. This phone is a
smartphone.

8.      The consent form that has been provided by the prosecution was signed by Mr.
Ford.

9.      However, the coercive language of law enforcement that preceded this consent and
the interview of Mr. Ford is not included.

10.     In short, and what will be adduced at a hearing is the fact that Mr. Ford was led to
believe that his liberty and his family's well-being would be jeopardized if he did not submit to an
interview and consent to be interrogated.

11.     To paraphrase, he was led to believe that things would be worse if he did not
consent to the search of his phone and if he did not consent to a custodial interrogation.

12.     Since the initial Motion To Suppress was filed, the prosecution has filed as an
Exhibit, a report showing that Mr. Ford's wife consented to the search of the car. However, the
prosecution cannot prove that the search of the locked glove compartment was voluntary and that

the search was within the scope of the purported consent.

## Legal Analysis

### A. The Search of the Glove Compartment of the Volkswagen

13.     Mr. Ford was in custody and handcuffed outside of the car when the police performed a warrantless search of the locked glove compartment. Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 17  (2009). The Tenth Circuit has joined the Third Circuit in interpreting *Gant* as focusing attention on the arrestee's ability to access weapons or destroy evidence at the time of the search, rather than the time of the arrest, regardless of whether the search involved a vehicle. *United States v. Knapp*, 917 F.3d 1161, 1168 (10th Cir. 2019); Since Mr. Ford was not within the reach of the car at the time of the search and since he was handcuffed, the search was improper. See *United States v. Gaines*, 918 F.3d 793, 800 (10th Cir. 2019).

14.     Since the defense filed its initial Motion To Suppress the prosecution has disclosed a report that alleges that Mr. Ford's wife consented to a search of the car.

15.     The consent was not voluntary.
Warrantless searches violate the Fourth Amendment   unless they fall within a specific exception to the warrant requirement. Consen**t** is one such exception and therefore, "a vehicle may be searched if a person in control of the vehicle has given his voluntary consent to the search. Whether voluntary consent was given is a question of fact determined by the totality of the circumstances. *Id.* The government bears the burden of showing the consent was voluntary. To meet its burden, the government (1) "must proffer clear

and positive testimony that consent was unequivocal and specific and freely given" and (2) "prove that this consent was given without implied or express duress or coercion.
*United States v. Lyons*, 510 F.3d 1225, 1239 (10th Cir. 2007)

16.     Nothing that has been disclosed discusses the scope of the consent and the fact of the matter is, that the glove compartment was locked and there was no specific consent to unlock this glove compartment.

17.     The search of the glove compartment was outside of the scope of any voluntary consent to a search of the car.

**The Search of the Cellphone**

18.     Mr. Ford did not voluntarily consent to the search of his cellphone. Voluntariness is a question of fact and is determined from the totality of the circumstances. *United States v. Cervine*, 169 F. Supp. 2d 1204, 1216 (D. Kan. 2001)

19.     The police conduct that preceded the signing of the consent form, leaves any resulting consent involuntary.

20.     Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' The fact that technology now allows an individual to carry such information in hand does not make the information any less worthy of the protection for which the Founders fought. The Supreme Court's "answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403, 134 S. Ct. 2473, 2494-95 (2014).

21.     Mr. Ford did not voluntarily consent to the search and subsequent extraction of the information on his phone.

22.     Furthermore, Mr. Ford was led to believe that if he did not submit to an

interview with law enforcement, he would have more severe legal problems than he would have if he did submit to the initial interview.

**Fruit of the Poisonous Tree**

23.     The fruit of the poisonous tree doctrine enunciated in *Wong Sun v United States,* 371 U.S. 471 (1963) applies and requires the suppression of all evidence including the subsequent statements made by Mr. Ford. Evidence obtained on April 12, 2019 led to subsequent evidence collection and interrogation.

24.     The statements obtained om Mr. Ford are directly linked to the evidence that was obtained in violation of Mr. Ford's Fourth Amendment rights.

25.     Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment. *Brown v. Illinois,* 422 U.S. 590, 601-02, 95 S. Ct. 2254, 2261 (1975).

**Conclusion**

The above-mentioned evidence including all statements made by Mr. Ford must be suppressed.

Respectfully submitted,

s/Sean M. McDermott
Sean M. McDermott
McDermott Stuart & Ward LLP
140 E. 19th Avenue, Suite 300
Denver, CO 80203
(303) 832-8888
(303) 863-8888 (fax)

Email: smcdermott@mswdenver.com

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd  day of September 2019, I filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

<u>s/ Sean McDermott</u>
Sean McDermott