IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 19-CR-253-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  IAN THOMAS FORD

    **Defendant.**

---

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

---

    Mr. Ford through his counsel, requests that he be released for compassionate reasons. moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). As grounds therefore:

**Factual Background**

    Mr. Ford is being held in FCI Florence within the Bureau of Prisons. This follows Mr. Ford being sentenced to 14 months after pleading guilty to Counts one and three by this Honorable Court on February 25, 2020. The sentences on Counts One and Three are concurrent.

    Following sentencing, Mr. Ford self-reported to the Bureau of Prisons where he has remained. As this Court may recall from the sentencing hearing and the presentence report, Mr. Ford has his own company in Colorado Springs. He cares for the children that he and his wife Robyn Ford raise. He is the financial backbone of the family. (Exhibit A).

    Mr. Ford's codefendant Robyn Ford has been caring for the family while Mr. Ford has been in prison. Without the financial support of Mr. Ford, the family has had to initiate bankruptcy proceedings. (Exhibit B).

1

Shortly after Mr. Ford was sentenced, the Covid-19 pandemic spread and has impacted society, taken over 200,000 lives in the United States, it has impacted economies, and devastated some businesses. As this Court knows, the pandemic has affected every aspect of American life and most of the world in a significant way.

As a result of the pandemic and its impact financial and otherwise, Mr. Ford applied for an administrative remedy for home confinement. Among the reasons for denying Mr. Ford's request, Warden C. Carter stated:

> The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence or a designation to home confinement.

Exhibit C).

Currently, Mr. Ford is in quarantine. He was placed on quarantine the morning of October 28, 2020. Counsel scheduled a call with Mr. Ford, so that Mr. Ford and counsel could discuss the status of this Motion before Mr. Ford was quarantined. However, Mr. Ford was quarantined earlier in the day than anticipated.

Mr. Ford is in quarantine because he is about complete his sentence at Independence House in Denver. The BOP has stated that an RRC (halfway house) or HC (home confinement) is appropriate. (Exhibit D, p. 2). However, for reasons unknown to Mr. Ford, he is being sent to Independence House in Denver. Independence House currently has residents who have tested positive for COVID-19. Undersigned counsel is aware of this, because counsel has been contacted by a resident of Independence House who is currently hospitalized with COVID-19 and a related ailment. Undersigned counsel has attempted to contact the director of Independence House, Mathew Brandt, to confirm the number of COVID-19 cases. Mr. Brandt has left a message with undersigned counsel and undersigned has left a return message.  While undersigned would prefer to get an official confirmation from

2

Independence House, time is of the essence, since Mr. Ford is scheduled to go to the halfway house. He is currently in quarantine, awaiting to be sent to the Independence House.

## Authority to Resentence Mr. Ford

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." Importantly, the reasons that can justify resentencing need not involve only terminal illness or urgent dependent care for minor children. The language of the statute applies "in any case." *Id.,* at (c)(1)(A).

Congress first enacted the modern form of the compassionate release statute, codified at 18 U.S.C. § 3582, as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a sentencing court can reduce a sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c) (1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director's filing of an initial motion to the sentencing court. Absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for compassionate release. *Id.*

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under Section 3582(c). But the legislative history to the statute gives an indication of how Congress thought the statute should be employed by the federal courts. The Senate Committee stressed how some individual cases, even after the abolishment of federal parole, still may warrant a second look at resentencing:

3

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, *cases in which other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

S. Rep. No. 98-225, at 55-56 (1983) (emphasis added).

Congress intended that the circumstances listed in § 3582(c) would act as "safety valves for modification of sentences," *id.* at 121, enabling judges to provide second looks for possible sentence reductions when justified by various factors that previously could have been addressed through the abolished parole system. This safety valve statute would "assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." *Id.* Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly *compelling situations*." *Id.* (emphasis added).

Congress initially delegated the responsibility for outlining what could qualify as "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). The Commission took considerable time to promulgate its policy in response to Congress's directive. It finally acted in 2007, almost a generation later, with the very

4

general guidance that "extraordinary and compelling reasons" may include medical conditions, age, **family circumstances**, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A). However, this guidance did little to spur the BOP to file on behalf of prisoners who might have met these general standards. After a negative Department of Justice Inspector General report found that the BOP rarely invoked its authority under the statute to move for reduced sentences, the Commission felt compelled to act again. *See* U.S. Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program,* I-2023-006 (Apr. 2013).

The Commission amended its policy statement on "compassionate release" in November 2016. *See* U.S.S.G. § 1B1.13 Amend. (11/1/2016). In addition to broadening the eligibility guidelines for sentencing courts, the new policy statement admonished the BOP for its past failures to file motions on behalf of inmates who had met the general criteria identified in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13, n.4; *see also United States v. Dimasi*, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the history of the BOP, DOJ and Commission's interplay in developing guidance for "compassionate release" motions). Notably, the Commission concluded that reasons beyond medical illness, age, and family circumstances could qualify as "extraordinary and compelling reasons" for resentencing. *Id.,* n.1(A) (including a category for "Other Reasons," when there is "an extraordinary and compelling reason other than, or in combination with, the

reasons described in subdivisions (A) through (C).").[2]

The Commission's actions, however, did little to change the dearth of filings by the BOP on behalf of inmates who satisfied the Commission's general guidance. During the more than three decades during which the BOP was the exclusive gatekeeper for "compassionate release" motions, very little effort was made to implement Congress's intention to provide a safety valve to correct injustices or allow relief under extraordinary and compelling circumstances.

This changed with the passage of the First Step Act in 2018. *See* P.L.115- 391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Section 603 of the First Step Act

---

[2] *But see United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (holding that, given the changes to the compassionate release statute by the First Step Act, U.S.S.G. § 1B1.13, application note 1(D) "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence- modification provisions under § 3582."); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019) ("Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that application note 1(D) is "inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate," and courts thus may "consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement"); *but see United States v. Lynn*, No. CR 89-0072- WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) (holding that application note 1(D) governs compassionate release reductions of sentence and federal judges have no authority to create their own criteria for what constitutes an "extraordinary and compelling" reason for resentencing).

changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP. Courts are now authorized to consider a defendant's motion, even one which the BOP opposes, and order resentencing if a resentencing court finds that "extraordinary and compelling reasons" warrant a reduction and such a reduction is consistent with the Section 3553(a) factors. *Id.* Resentencing courts are also advised that any decision to reduce a previously ordered sentence be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in sentence under the compassionate release statute. Courts are recognizing that COVID-19 is an "extraordinary and compelling reason" to reduce a sentence under the compassionate release statute. As stated by Judge Kane, "[t]hough not specifically contemplated as a ground for reducing a defendant's sentence under 18 U.S.C. § 3582(c), being at heightened risk of severe illness or death due to a world-halting pandemic certainly must amount to extraordinary and compelling reasons." *United States v. Jenkins*, 2020 U.S. Dist. LEXIS 86003, pp.14-15 (D. Colo., May 8, 2020).

### It Makes Sense to Grant Mr. Ford Compassionate Release

There are COVID cases at Independence House. It is unnecessary for Mr. Ford to be presented with this risk. He was on electronic home monitoring prior to his being sentenced. Mr.

Ford was working as an independent contractor and he was making money to support his family. (Doc. No. 81, Presentence Report ¶¶ 86-88). If he is permitted to go home on Electronic Home Monitoring, then Mr. Ford can work and support his family. A stay at Independence House, does not give Mr. Ford this opportunity.

All counties in the Denver Metro area are currently rated at an orange alert, and everyone is being urged to remain at home where it is safest. https://covid19.colorado.gov/data/covid-19-dial/covid-19-dial-dashboard.

In Mr. Ford's case, common sense and the law support Mr. Ford being released to his home in Colorado Springs instead of going to Independence House where he will be at risk to contract to COVID-19.

Wherefore Mr. Ford respectfully requests that he be granted compassionate release and released to his home on electronic home monitoring.

Respectfully submitted,

s/Sean M. McDermott
   Sean M. McDermott to
   McDermott Stuart & Ward LLP
   140 E. 19th Avenue, Suite 300
   Denver, CO 80203
   (303) 832-8888
   (303) 863-8888 (fax)
   Email: smcdermott@mswdenver.com

## CERTIFICATE OF SERVICE

  I hereby certify that on this 12th day of November 2020, I filed the foregoing **pleading** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

             s/ Sean McDermott
              Sean McDermott